# In the United States Court of Federal Claims

## No. 19-108C
## Filed: December 16, 2019

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                                              \*
**ZAMANTHA TAPIA,**                                           \*

**MARA DUNN,**                                                \*

**JENNIFER WILMOT,**                                          \*

**JENNIFER CRISOSTOMO,**                                      \*

**KIMBERLY COLON,**                                           \*      **Subject Matter Jurisdiction; Motion to**
**MELISSA LARSON,**                                           \*      **Dismiss; Veterans' Benefits.**

                           **Plaintiffs,**                    \*

                    **v.**                                    \*

**UNITED STATES,**                                            \*
                                                              \*
                           **Defendant.**                     \*
                                                              \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Jason E. Perry**, Law Office of Jason Perry LLC, Wellington, Florida, for plaintiffs. With him was **Luke D. Miller**, Military Disability Lawyer LLC, Salem, Oregon.

**Shari A. Rose**, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With her were **Alexis J. Echols**, Trial Attorney, Commercial Litigation Branch, **Martin F. Hockey, Jr.**, Deputy Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division.

## O P I N I O N

<u>**HORN, J.**</u>

The above-captioned case was filed by the six named plaintiffs on behalf of themselves and other proposed class members as the "primary family caregivers" of injured veterans. Plaintiffs' complaint seeks compensation for alleged wrongful determinations under the "Program of comprehensive assistance for family caregivers" (hereinafter, the Family Caregivers Program), which is administered by the Veterans Health Administration (VHA) of the United States Department of Veterans Affairs (VA) pursuant to 38 U.S.C. § 1720G (2012). Plaintiffs' complaint also seeks class certification to include other primary family caregivers who have been affected by alleged wrongful determinations by the VA under the Family Caregivers Program. Plaintiffs allege that they and other proposed class members were wrongfully denied the appropriate caregiver assistance for "family caregivers of eligible veterans." Defendant responds by arguing that

the United States Court of Federal Claims lacks subject matter jurisdiction to hear this case.

## FINDINGS OF FACT

The Family Caregivers Program was initially established in 2010 under section 101 of Title I of the Caregivers and Veterans Omnibus Health Services Act of 2010, Pub. L. No. 111-163, 124 Stat. 1130 (May 5, 2010) (the Caregivers Act). The preamble to that Act states that it is "[a]n Act To amend title 38, United States Code, to provide assistance to caregivers of veterans, to improve the provision of health care to veterans, and for other purposes." Id. (capitalization in original). Section 101 of the Caregivers Act is broken into subsections. The Family Caregivers Program, which is the subject of the above-captioned case, is established under subsection (a). The "Program of General Caregiver Support" is established under subsection (b) and is not at issue in this case. Subsections (c) and (d) are titled "Construction" and "Definitions," respectively, and apply to both Programs. A fifth subsection, subsection (e), which included appropriation authorization, was originally enacted by the Caregivers Act, but was subsequently repealed in 2018. All of section 101 of the Caregivers Act is codified at 38 U.S.C. § 1720G, titled "Assistance and support services for caregivers." The Family Caregivers Program is codified in subsection (a) of 38 U.S.C. § 1720G.

The statute at 38 U.S.C. § 1720G(a)(1)(A) authorizes the Family Caregivers Program, stating that "[t]he Secretary shall establish a program of comprehensive assistance for family caregivers of eligible veterans." Id. The statute at 38 U.S.C. § 1720G(a)(1)(B) provides, however, that "[t]he Secretary shall only provide support under the program required by subparagraph (A) to a family caregiver of an eligible veteran if the Secretary determines it is in the best interest of the eligible veteran to do so." Id. (emphasis added).

The statute at 38 U.S.C. § 1720G(a)(2) establishes the requirements to be considered an "eligible veteran" for purposes of the Family Caregivers Program. An "eligible veteran" is "any individual who . . . is a veteran or member of the Armed Forces undergoing medical discharge from the Armed Forces" and who "has a serious injury (including traumatic brain injury, psychological trauma, or other mental disorder) incurred or aggravated in the line of duty in the active military, naval, or air service." Id. § 1720G(a)(2)(B). The Family Caregivers Program also requires that the eligible veteran is

> in need of personal care services because of--
>
>> (i) an inability to perform one or more activities of daily living;
>>
>> (ii) a need for supervision or protection based on symptoms or residuals of neurological or other impairment or injury;

> (iii) a need for regular or extensive instruction or supervision without which the ability of the veteran to function in daily life would be seriously impaired; or
>
> (iv) such other matters as the Secretary [of Veterans Affairs] considers appropriate.

Id. § 1720G(a)(2)(C).

The statute at 38 U.S.C. § 1720G(a)(3) discusses the type of "assistance" that is to be provided to an approved "family member" who is a "provider of personal care services for an eligible veteran" (hereinafter, family caregiver). See id. § 1720G(d)(2), (a)(3)(A)(i). The Family Caregivers Program provides additional assistance to the family caregiver who is deemed the "primary provider of personal care services for an eligible veteran" (hereinafter, primary family caregiver). Id. § 1720G(a)(3)(A)(ii). A "family member" can include the veteran's parent, spouse, child, step-family member, extended family member, as well as an individual who "lives with the veteran but is not a member of the family of the veteran." Id. § 1720G(d).

The statute at 38 U.S.C. § 1720G(a)(4) describes the application process for the assistance available under the Family Caregivers Program, stating that "[a]n eligible veteran and a family member of the eligible veteran seeking to participate in the program required by paragraph (1) [the Family Caregivers Program] shall jointly submit to the Secretary an application therefor in such form and in such manner as the Secretary considers appropriate." Id.

The statute at 38 U.S.C. § 1720G(a)(5) discusses the evaluations that the Secretary conducts of the eligible veteran and the family member upon their joint application, and states:

> (5) For each application submitted jointly by an eligible veteran and family member, the Secretary shall evaluate (in collaboration with the primary care team for the eligible veteran to the maximum extent practicable)--
>
> > (A) the eligible veteran--
> >
> > > (i) to identify the personal care services required by the eligible veteran; and
> > >
> > > (ii) to determine whether such requirements could be significantly or substantially satisfied through the provision of personal care services from a family member; and

(B) the family member to determine the amount of instruction, preparation, and training, if any, the family member requires to provide the personal care services required by the eligible veteran--

(i) as a provider of personal care services for the eligible veteran; and

(ii) as the primary provider of personal care services for the eligible veteran.

Id.; see also id. § 1720G(a)(7) (discussing primary family caregivers) (discussed below).

The statute at 38 U.S.C. § 1720G(a)(6)(A) states that the "Secretary shall provide each family member of an eligible veteran who makes a joint application under paragraph (4) the instruction, preparation, and training determined to be required by such family member under paragraph (5)(B)." Id. The statute at 38 U.S.C. § 1720G(a)(6)(B) states that "[u]pon the successful completion by a family member of an eligible veteran of instruction, preparation, and training under subparagraph (A), the Secretary shall approve the family member as a provider of personal care services for the eligible veteran." Id.

The statute at 38 U.S.C. § 1720G(a)(7)(A) states that "[f]or each eligible veteran with at least one family member who is described by subparagraph (B), the Secretary shall designate one family member of such eligible veteran as the primary provider of personal care services for such eligible veteran." Id. The statute at 38 U.S.C. § 1720G(a)(7)(B) further states:

(B) A primary provider of personal care services designated for an eligible veteran under subparagraph (A) shall be selected from among family members of the eligible veteran who--

(i) are approved under paragraph (6) as a provider of personal care services for the eligible veteran;

(ii) elect to provide the personal care services to the eligible veteran that the Secretary determines the eligible veteran requires under paragraph (5)(A)(i);

(iii) have the consent of the eligible veteran to be the primary provider of personal care services for the eligible veteran; and

(iv) are considered by the Secretary as competent to the primary provider of personal care services for the eligible veteran.

4

Id. The statute at 38 U.S.C. § 1720G(a)(7)(C) and (D) discusses revocation procedures of designated primary family caregivers, giving the veteran and the Secretary such responsibility. The statute at 38 U.S.C. § 1720G(a)(7)(C) states:

> (C) An eligible veteran receiving personal care services from a family member designated as the primary provider of personal care services for the eligible veteran under subparagraph (A) may, in accordance with procedures the Secretary shall establish for such purposes, revoke consent with respect to such family member under subparagraph (B)(iii).

Id. The statute at 38 U.S.C. § 1720G(a)(7)(D) states:

> (D) If a family member designated as the primary provider of personal care services for an eligible veteran under subparagraph (A) subsequently fails to meet any requirements set forth in subparagraph (B), the Secretary--
>
> > (i) shall immediately revoke the family member's designation under subparagraph (A); and
> >
> > (ii) may designate, in consultation with the eligible veteran, a new primary provider of personal care services for the eligible veteran under such subparagraph.

Id.

The assistance provided to family caregivers and primary family caregivers under the Family Caregivers Program is described in 38 U.S.C. § 1720G(a)(3)(A)(i) and (ii), which states:

> (3)(A) As part of the program required by paragraph (1) [the Family Caregivers Program], the Secretary shall provide to family caregivers of eligible veterans the following assistance:
>
> > (i) To each family caregiver who is approved as a provider of personal care services for an eligible veteran under paragraph (6)--
> >
> > > (I) such instruction, preparation, and training as the Secretary considers appropriate for the family caregiver to provide personal care services to the eligible veteran;
> > >
> > > (II) ongoing technical support consisting of information and assistance to address, in a timely manner, the routine, emergency, and specialized caregiving needs of the family

5

caregiver in providing personal care services to the eligible veteran;

(III) counseling; and

(IV) lodging and subsistence under section 111(e) of this title.

(ii) To each family caregiver who is designated as the primary provider of personal care services for an eligible veteran under paragraph (7)--

(I) the assistance described in clause (i);

(II) such mental health services as the Secretary determines appropriate;

(III) respite care of not less than 30 days annually, including 24-hour per day care of the veteran commensurate with the care provided by the family caregiver to permit extended respite;

(IV) medical care under section 1781 of this title;

(V) a monthly personal caregiver stipend; and

(VI) through the use of contracts with, or the provision of grants to, public or private entities--

(aa) financial planning services relating to the needs of injured veterans and their caregivers; and

(bb) legal services, including legal advice and consultation, relating to the needs of injured veterans and their caregivers.

Id.

Regarding the monthly stipend for primary family caregivers, the statute at 38 U.S.C. § 1720G(a)(3)(C)(i) states that "[t]he amount of the monthly personal caregiver stipend provided under subparagraph (A)(ii)(V) shall be determined in accordance with a schedule established by the Secretary that specifies stipends based upon the amount and degree of personal care services provided." Id. The implementing regulation at 38

C.F.R. § 71.40(c)(4) (2019) directs the VA to set stipend amounts by "determin[ing] the eligible veteran's level of dependency based on the degree to which the eligible veteran is unable to perform one or more activities of daily living (ADLs), or the degree to which the eligible veteran is in need of supervision or protection based on symptoms or residuals of neurological or other impairment or injury." Id.

The statute at 38 U.S.C § 1720G(c), titled "Construction," states:

(1) A decision by the Secretary under this section affecting the furnishing of assistance or support shall be considered a medical determination.

(2) Nothing in this section shall be construed to create--

(A) an employment relationship between the Secretary and an individual in receipt of assistance or support under this section; or

(B) any entitlement to any assistance or support provided under this section.

Id.

The complaint currently before the court asserts that, for each named plaintiff, "[t]he DVA [Department of Veterans Affairs], acting through the VHA [Veterans' Health Administration], did not follow the laws, regulations, and directives applicable to the determination of the award of proper entitlements and Tier level, the reduction in Tier level, and/or the revocation of Family Caregiver Program status."[1] Specifically, plaintiffs assert violations of 38 U.S.C. § 1720G, as well as regulations and directives promulgated pursuant to 38 U.S.C. § 1720G, including 38 C.F.R. § 71.20 (2019), 38 C.F.R. § 71.40, 38 C.F.R. § 71.45 (2019), VHA Directive 1152(1): Caregiver Support Program,[2] and VHA Directive 1041: Appeal of VHA Clinical Decisions.[3]

Plaintiffs allege that between May 5, 2011 and September 30, 2018, the VA received more than 100,000 applications for the Family Caregivers Program, and that, similar to the named plaintiffs, thousands of applicants "were wrongfully determined ineligible for the program, terminated from the program, erroneously assigned low Tier levels, or reduced in Tier level by the DVA [Department of Veterans Affairs]." Plaintiffs indicate in their complaint that the proposed class members should include:

---

[1] For the purposes of the motion to dismiss, the court does not address the individual claims of each named plaintiff, but only considers the statutory framework.

[2] https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=5423 (amended Oct. 4, 2018) (last visited Dec. 16, 2019) (hereinafter, VHA Directive 1152(1))

[3] https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=3285 (last visited Dec. 16, 2019) (hereinafter, VHA Directive 1041).

[A]ll previous, current, or denied caregivers of veterans who:

> a. Are veterans of the United States Air Force, Army, Coast Guard, Marine Corps, and Navy;

> b. Served in the United States military on or after September 11, 2001;

> c. Were found to have a service connected medical condition;

> d. Applied for the DVA's Primary Family Caregiver Program;

> e. Were denied Primary Family Caregiver Program eligibility, were revoked from the Primary Family Caregiver Program or were erroneously assigned to or reduced in Tier level; and

> f. Were not provided with the correct allowances and pay, services, and a monthly stipend that they were due under law and regulation.

In their complaint, the named plaintiffs seek:

> [E]xpenses incurred by the plaintiffs and the proposed class members, based on their actual payments made out of pocket after they were denied the assistance of statutorily and regulatory mandated family caregiver support, in order to provide medical care, respite care, counseling, travel, and lodging, and subsistence that they were wrongfully denied.

Plaintiffs assert the following prayers for relief:

> a. Certify this action as a class action on behalf of the proposed Class;

> b. Designate Ms. Tapia, Mrs. Dunn, Mrs. Wilmot, Mrs. Crisostomo, Mrs. Colon, and Ms. Larson as representatives of the Class;

> c. Designate plaintiffs' counsel of record as Class Counsel;

> d. Enjoin the DVA from continuing its unlawful practices described in this complaint;

> e. Award the plaintiffs monetary benefits that formulaic in nature in amount to be determined at trial;

f. Award plaintiffs their costs and attorney's fees; and

g. Grant such other relief as this Court deems just and proper.

Plaintiffs allege that class certification is appropriate because "[t]he named plaintiffs' claims are typical of the class" and "[t]he actions of the United States and the DVA have generally affected the entire class, thus making final relief appropriate with respect to the class as a whole."

In plaintiffs' complaint, the plaintiffs assert that jurisdiction in this court is proper because the Family Caregivers Program statutes and regulations are money-mandating and because the "complaint alleges money damages in excess of $10,000." Plaintiffs' complaint also asserts that jurisdiction is not prohibited because "plaintiffs, and those they seek to represent, are not necessarily veterans in order to qualify for the entitlements they claim, and they are not seeking a benefit or service that falls within the purview of 38 U.S.C. § 511(a)." The statute at 38 U.S.C. § 511(a) (2012), discussed in more detail below, states:

(a) The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

Id.

Plaintiffs nonetheless argue that jurisdiction is proper in this court because plaintiffs "have no appellate rights to review of the decisions in their cases by either the BVA [Board of Veterans Appeals] or CAVC [Court of Appeals for Veterans' Claims]," which, as discussed below, is the standard review path for an adverse decision by the Secretary for the majority of VA claims, such as VA disability and VA education benefits. According to plaintiffs, they "have no right to seek review at the Board of Veterans Appeals ('BVA') because this is a VHA program and is not a Veterans Benefits Administration ('VBA') program."

In defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, defendant agrees that plaintiffs' claims are precluded from the standard review path. This is because, pursuant to 38 U.S.C. § 1720G(c)(1), a determination by the Secretary under the Family Caregivers Program "shall be considered a medical determination." Furthermore, according to the VA regulation at 38 C.F.R. § 20.104(b) (2019), titled "Jurisdiction of the Board [of Veterans' Appeals]":

(b) Appellate jurisdiction of determinations of the Veterans Health Administration. The Board's appellate jurisdiction extends to questions of

eligibility for hospitalization, outpatient treatment, and nursing home and domiciliary care; for devices such as prostheses, canes, wheelchairs, back braces orthopedic shoes, and similar appliances; and for other benefits administered by the Veterans Health Administration. <u>Medical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual, are not adjudicative matters and are beyond the Board's jurisdiction</u>. Typical examples of these issues are whether a particular drug should be prescribed, whether a specific type of physiotherapy should be ordered, and similar judgmental treatment decisions with which an attending physician may be faced.

<u>Id.</u> (emphasis added). Defendant also cites to the preamble to the regulations in the Federal Register for the Family Caregivers Program, where the VA states its position that "all determinations that affect the furnishing of assistance or support through the programs under 38 U.S.C. [§] 1720G [the Family Caregivers Program] are medical determinations as a matter of law, and as such may not be adjudicated in the standard manner as claims associated with veterans' benefits." Caregivers Program, 80 Fed. Reg. 1357, 1366 (Jan. 9, 2015) (codified at 38 C.F.R. pts. 17, 71).

Defendant also argues that the language of 38 U.S.C. § 511(a), discussed above, "broadly divests all federal district courts and this Court [the United States Court of Federal Claims] of jurisdiction to review questions of law and fact necessary to VA benefits determinations." Moreover, defendant asserts that the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (Nov. 18, 1988), "provides that the exclusive judicial remedy for the denial of VA benefits is to appeal to the Court of Appeals for Veterans Claims." In response to plaintiffs' argument that family caregivers are "not necessarily veterans in order to qualify for the entitlements they claim," and thus that 38 U.S.C. § 511(a) should not apply, defendant asserts that "[t]he statue [sic] providing for the Family Caregiver Program falls under chapter 17 of title 38, entitled 'Veterans' Benefits.'" Defendant does not appear to dispute that the Family Caregivers Program is money-mandating, but argues summarily that "[t]here is no express waiver of sovereign immunity permitting this Court's review of the claims brought by plaintiffs here."

In plaintiffs' response to defendant's motion to dismiss, plaintiffs reassert that plaintiffs have properly invoked the court's subject matter jurisdiction. Plaintiffs try to argue a general principle that defendant "has not overcome the strong presumption that judicial review of agency action is available to aggrieved parties." Plaintiffs also assert that "defendant's argument is contradicted by its citation to 80 Fed. Reg. 1366," the preamble to the final Rule for the Family Caregivers Program, which, according to plaintiffs, "demonstrates that the VA's actual position is that there is neither BVA nor CAVC jurisdiction to hear plaintiffs' claims." While plaintiffs "agree that the medical determinations are not reviewable under the *standard* manner," plaintiffs argue that "the *non-standard* review is still available, administratively through the VHA appeals process and judicially before this Court when money claims against the United States in excess of $10,000 are involved." (emphasis in original). Plaintiffs then cite to the portion of the

preamble of the final Rule to the Family Caregivers Program that discusses the VHA clinical appeals process, which states, in pertinent part:

> Under the VHA appeals process, patients or their representatives have access to a fair and impartial review of disputes regarding clinical determinations or services that are not resolved at the facility level. This process is intended to resolve conflicts about whether an appropriate clinical decision has been made, and the process certainly can resolve whether the adverse decision was based, for example, on a misreading of a date in a military record. Other issues that are being resolved through the VHA clinical appeals process include basic eligibility, determination of "illness" or "injury," and the tier level assigned for stipend payment. This appeals process does not defy the statutory restriction at 38 U.S.C. [§] 1720G(c)(1) against appeals to the Board of Veterans' Appeals because it is specifically designed to resolve conflicts based upon medical determinations.

Caregivers Program, 80 Fed. Reg. at 1366.

In defendant's reply in support of its motion to dismiss, defendant reiterates its argument that plaintiffs "failed to meet their burden of establishing subject matter jurisdiction." Defendant argues that, although "plaintiffs point to 38 U.S.C. § 1720G and 38 C.F.R. § 71.40(c), which provide for monetary and other benefits," "this Court has previously found that a statute providing compensation for VA benefits does not provide the Court 'with separate and independent money-mandating jurisdiction.'" (quoting Kalick v. United States, 109 Fed. Cl. 551, 557-59 (2013), aff'd, 541 F. App'x 1000 (Fed. Cir. 2013)). Defendant also contends that, regardless of whether or not plaintiffs are appealing "medical determinations," plaintiffs are still seeking review of veterans' benefits determinations, which courts are barred from reviewing by 38 U.S.C. § 511(a). In arguing that plaintiffs are bringing claims that benefit veterans, and thus fall within the purview of 38 U.S.C. § 511(a), defendant asserts that "[t]he assistance and support services VA provides to caregivers on account of and for the benefit of veterans under the Program involves both payments and services, eligibility for which is determined under 38 U.S.C. § 1720G, a law administered by VA and pertaining to veterans."

At the oral argument on defendant's motion to dismiss, the court asked each of the parties to file a supplemental brief further addressing the VHA clinical appeals process. Defendant's supplemental brief outlines the VHA clinical appeals process contained in VHA Directive 1041: Appeal of VHA Clinical Decisions. Defendant explains that applicants or beneficiaries who receive unfavorable decisions in the Family Caregivers Program can initiate the appeals process by filing an appeal with the local VA Medical Center that issued the unfavorable decision. See id. at 1. At the VA Medical Center, a clinical team first adjudicates the appeal and attempts to reach a resolution with the applicant or beneficiary. See id. at 3. If the clinical team cannot resolve the conflict, the clinical team then sends the appeal to the VA Medical Center's Chief of Staff, who reviews the appeal and provides a final determination. See id. After the VA Medical Center issues

its decision, the applicant or beneficiary may then appeal to their respective Veterans Integrated Service Network (VISN) Director. See id. Based on the submitted materials, the VISN Director then issues a decision on the appeal or may request review by a VISN clinical panel to review the materials and issue a recommendation on the appeal. See id. at 2. Alternatively, the VISN Director may request an external review to issue a recommendation on how to resolve the appeal. See id. The VISN Director's decision on the appeal, however, is the end of the VHA clinical appeals process, with no further review available. See id. at 2-3.

In plaintiffs' supplemental brief, plaintiffs again allege that jurisdiction is proper in this court. Although plaintiffs' own complaint discusses the VHA's clinical appeals process outlined by VHA Directive 1041, plaintiffs now argue that "[m]any of plaintiffs' claims predate VHAD [VHA Directive] 1041," which was issued in 2016, and "[t]herefore, VHAD 1041's clinical appeal process is not applicable to all of plaintiffs' claims and does not limit plaintiffs' rights to seek redress from this Court." In the appendix to plaintiffs' supplemental brief, however, plaintiffs refer to VHA Directive 2006-057: VHA Clinical Appeals (Oct. 16, 2006) (hereinafter, VHA Directive 2006-057), rescinded and replaced with VHA Directive 1041: Appeal of VHA Clinical Decisions (Oct. 24, 2016), which was issued in 2006 and outlines the availability of a VHA clinical appeals process prior to the establishment of the Family Caregivers Program in 2010. VHA Directive 2006-057 states, in relevant part:

> In 1991, VHA issued a Directive mandating that all medical centers operate a Patient Advocate Program to address patient inquiries and complaints. In Fiscal Year (FY) 1999, in response to Eligibility Reform and the implementation of an enrollment system with the provision of a fixed benefits package, VHA initiated a review of how clinical disputes were being handled throughout the system. As an outgrowth of that review, in FY 2000, VHA instituted an External Appeal system, which allows Veterans Integrated Service Networks (VISNs) to request prompt, impartial reviews of clinical determination decisions by a professional board external to the agency. As an additional development, this Directive addresses the handling of clinical appeals internal to the agency, with the goal of creating a more efficient and consistent system that incorporates VISN-based management into the reviews and associated veteran customer service improvement activities.

Id. at 1 (emphasis in original).[4]

## DISCUSSION

As indicated above, defendant has moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354

---

[4] VHA Directive 2006-057 was rescinded and replaced on October 24, 2016 with VHA Directive 1041. VHA Directive 1041 left unchanged the ultimate appeal with the VISN Director.

(Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2012), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where

"money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

Furthermore, just as Congress can confer subject matter jurisdiction upon this court, Congress can also subsequently limit that jurisdiction, such that this court may not entertain a particular claim even though the claim might otherwise qualify for Tucker Act jurisdiction. See Palmore v. United States, 411 U.S. 389, 401 (1973) (explaining that Congress is empowered to establish lower federal courts and to grant and withhold jurisdiction from those courts as it deems appropriate (citing Cary v. Curtis, 44 U.S. (3

How.) 236, 245 (1845) (footnote omitted))). "When such a 'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." Verada, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (quoting St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549-50 (Fed. Cir. 1994); see also Appalachian Reg'l Healthcare, Inc. v. United States, 999 F.2d 1537, 1577 (Fed. Cir. 1993).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 87, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); see also Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2019); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555); aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

In a statutory construction analysis, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)); see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. 1670, 1680 (2012) ("We begin 'where all such inquiries must begin: with the language of the statute itself.'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989))); Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."); Click-To-Call Techs., LP v. Ingenio, Inc., YellowPages.com, LLC, 899 F.3d 1321, 1329 (Fed. Cir. 2018) ("The first step 'is to determine whether the language at issue has a plain and unambiguous meaning . . . .'" (quoting Barnhart v. Sigmon Coal Co., Inc., 534 U.S. at 450)); Starry Assocs., Inc. v. United States, 892 F.3d 1372, 1377 (Fed. Cir. 2018); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 644 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Strategic Hous. Fin. Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1323 (Fed. Cir.) ("When interpreting any statute, we look first to the statutory language."), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 562 U.S. 1221 (2011). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. at 341 (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992); McCarthy v. Bronson, 500 U.S. 136, 139 (1991)); see also King v. Burwell, 135 S. Ct. 2480, 2489 (2015) ("[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000))). In construing a statute, courts "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" Schindler Elevator Corp. v. United States, 563 U.S. 401, 407 (2011) (2011) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009) (internal quotation marks omitted)). Even "'[w]hen terms used in a statute are undefined, we give them their ordinary meaning.'" Schindler Elevator Corp. v. United States, 563 U.S. at 407 (quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)). "'Beyond the statute's text, the traditional tools of statutory construction include the statute's structure, canons of statutory construction, and legislative history.'" Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir.) (quoting Bull v. United States, 479 F.3d 1365, 1376 (Fed. Cir. 2007)), reh'g en banc denied (Fed. Cir. 2010); see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. at 1680 ("[W]e consider each question [of statutory interpretation] in the context of the entire statute." (citing Robinson v. Shell Oil Co., 519 U.S. at 341)); Roberts v. Sea-Land Servs., Inc., 132 S. Ct. 1350, 1356 (2012); Bush v. United States, 655 F.3d 1323, 1329 (Fed. Cir. 2011), cert. denied, 566 U.S. 1021 (2012).

The initial inquiry into the statutory text ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340); see also King v. Burwell, 135 S. Ct. at 2489 ("If the statutory language is plain, we must enforce it according to its terms." (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251

(2010)); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644; Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (quoting Millenium Lumber Distrib., Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008), reh'g granted, 319 F. App'x 914 (Fed. Cir. 2009). Thus, when the "'statute's language is plain, "the sole function of the courts is to enforce it according to its terms."'" Johnson v. United States, 529 U.S. 694, 723 (2000) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d at 1361 (citing Sharp v. United States, 580 F.3d at 1237); Candle Corp. of Am. v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004).

In interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute.  See Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("Our decision today follows the interpretive rule they invoke, that we must 'give effect . . . to every clause and word' of the Act." (omission in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); see also Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, "'a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or otherwise insignificant."'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible); Sharp v. United States, 580 F.3d 1234, 1238 (Fed. Cir. 2009). Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous.  See Duncan v. Walker, 533 U.S. at 174 (noting that courts should not treat statutory terms as "surplusage").  "[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976); see also Xianli Zhang v. United States, 640 F.3d 1358, 1368 (Fed. Cir.) (citing Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1365 (Fed. Cir. 2005)), reh'g and reh'g en banc denied (Fed. Cir. 2011), cert. denied, 566 U.S. 986 (2012); Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir.), reh'g denied (Fed. Cir. 2000).

The United States Supreme Court also has held that the specific terms of a statute supersede general terms within that statute or within another statute that might otherwise control. See Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–29 (1957) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling." (quoting D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932))); see also Bloate v. United States, 559 U.S. 196, 207 (2010); Bulova Watch Co. v. United States, 365 U.S. 753, 761 (1961). In addition, the Supreme Court has endorsed "the 'normal rule of statutory construction' that 'identical words used in different parts of the

same act are intended to have the same meaning.'" Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994)); see also Kislev Partners, L.P. ex rel. Bahar v. United States, 84 Fed. Cl. 385, 389, recons. denied, 84 Fed. Cl. 378 (2008).

If a statute is unequivocal on its face or the meaning of the statute is plain, there is usually no need to resort to the legislative history underlying the statute. See Whitfield v. United States, 543 U.S. 209, 215 ("Because the meaning of [the statute's] text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history . . . ."), reh'g denied sub nom. Hall v. United States, 544 U.S. 913 (2005). But see Chamberlain Grp., Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1196 (Fed. Cir.) ("Though 'we do not resort to legislative history to cloud a statutory text that is clear,' Ratzlaf v. United States, 510 U.S. 135, 147–48 (1994), we nevertheless recognize that 'words are inexact tools at best, and hence it is essential that we place the words of a statute in their proper context by resort to the legislative history.'" (quoting Tidewater Oil Co. v. United States, 409 U.S. 151, 157 (1972))), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 544 U.S. 923 (2005). In limited circumstances, legislative history may be helpful in certain instances "to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact it into law." Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1081–82 (2011) (citing Exxon Mobile Corp. v. Allapatah Servs., Inc., 545 U.S. 546, 568 (2005); see also Xianli Zhang v. United States, 640 F.3d at 1373. Legislative history, however, does not "trump[] clear text." Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d at 1361 (citing Sharp v. United States, 580 F.3d at 1238; Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392, 396 (Fed. Cir. 1990)). The Supreme Court, however, has noted that when it appears that the plain language of a statute resolves the issue, a court is to "look to the legislative history to determine only whether there is [a] 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987) (citing United States v. James, 478 U.S. 597, 606 (1986), abrogated on other grounds by Cent. Green Co. v. United States, 531 U.S. 425, 436 (2001); Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).

Plaintiffs set forth three main arguments for why they believe jurisdiction in this court is proper. First, plaintiffs argue that the statute and regulations of the Family Caregivers Program are money-mandating. Second, plaintiffs argue that, because determinations by the Secretary under the Family Caregivers Program are considered medical determinations, their claims are precluded from the standard review path enjoyed by other types of veterans' benefits, and, therefore, jurisdiction should be available here, in addition to the VHA's clinical appeals process. Third, plaintiffs argue that the language of 38 U.S.C. § 511(a), which appears to categorically bar courts from reviewing decisions by the Secretary relating to benefits to veterans, does not apply to them because family caregivers do not need to be veterans in order to receive assistance under the Family Caregivers Program.

Although plaintiffs argue that the Family Caregivers Program is money-mandating because it uses the term "shall," the statute for the Family Caregivers Program, 38 U.S.C. § 1720G(a), read in full suggests that the eligibility for the support provided to family caregivers and primary family caregivers of eligible veterans is discretionary. The statute states that the Secretary "shall only provide support under the program . . . <u>if the Secretary determines it is in the best interest of the eligible veteran to do so</u>." 38 U.S.C. § 1720G(a)(1)(B) (emphasis added). Therefore, the Secretary would appear to have the discretion to provide assistance or not. Moreover, the provision at 38 U.S.C. § 1720G(c)(2) states that "[n]othing" in section 1720G "shall be construed to create . . . any entitlement to any assistance or support provided" by the Family Caregivers Program. 38 U.S.C. § 1720G(c)(2).

The discretionary nature of the assistance provided under the Family Caregivers Program is distinguishable from traditional veterans' benefits, such as VA disability compensation pursuant to 38 U.S.C. § 1110 (2012), titled "Basic entitlement," which states that "the United States will pay to any veteran thus disabled" compensation for a service-connected injury. The statute at 38 U.S.C. § 1110 does not, however, condition such compensation on the Secretary's determination that it is in the best interest of the veteran to provide such compensation. <u>See id.</u> If a veteran meets the established criteria for a service-connected disability, an "entitlement" to receive the applicable benefit is triggered. <u>See id.</u> Under the Family Caregivers Program, however, the Secretary retains the right to determine eligibility, even if the caregiver has been given the requisite training, or in the case of the primary caregiver, even if the eligible veteran has given his or her consent. <u>See</u> 38 U.S.C. § 1720G(a)(7)(B). Indeed, the statute at 38 U.S.C. § 1720G(a)(7)(D) authorizes the Secretary to revoke primary caregiver assistance, including the stipend, if the Secretary considers the family caregiver has failed to meet any of the requirements of 38 U.S.C. § 1720G(a)(7)(B). The discretionary language in the statute, which conditions the possible receipt of assistance under the Family Caregivers Program, is clear on its face, and therefore the statute should not be viewed as mandatory or money-mandating.

Plaintiffs next argue that, because determinations by the Secretary under the Family Caregivers Program are considered medical determinations, thereby making the standard review path unavailable, jurisdiction should be available here. Although the language in the statute is clear on its face, the legislative history reinforces the court's conclusions. As discussed below, prior to the enactment of the Veterans' Judicial Review Act in 1988, which established for the first time an independent reviewing body in an Article I court, the United States Court of Appeals for Veterans Claims (CAVC) (originally named the Court of Veterans Appeals), court review, including in this court and its predecessors, was to be generally prohibited. The history of court review preclusion for veterans' benefits was discussed in the legislative history leading up to the enactment of the Veterans' Judicial Review Act:

Beginning with the doctrine that a suit against the United States may not be heard unless the Constitution or an Act of Congress grants jurisdiction, the Congress, when it has spoken on the issue at all, has generally precluded

judicial review of decisions in claims for veterans' compensation and pension benefits. When Congress first enacted legislation allowing certain claims to be brought against the United States, it specifically exempted claims for veterans pensions, "which at the time comprised virtually the entire veterans' program." Van Dolsen, Judicial Review of VA Actions, at 594 (1987). The first law expressly prohibiting review was enacted in 1924 as section 5 of the World War Veterans Act, 43 Stat. 608, 609. The so-called "Economy Act of 1933", 48 Stat. 8, 9, which gave the President wholesale authority to reduce or terminate veterans' pensions, made more explicit the Congressional decision to preclude judicial review of all decisions of the Administrator "under the provisions of this title, or the regulations issued pursuant thereto." See Hines v. United States ex rel. Marsh, 105 F. 2d 85 (D.C. Cir. 1939). The Supreme Court construed the statute in Lynch v. United States, 292 U.S. 571 (1934) "to remove the possibility of judicial relief". The 1940 revision purported to be merely a restatement of the law as it then existed, see Van Dolsen, Judicial Review of VA Actions 595, fn. 99, as did the 1957 and 1958 recodifications.

H.R. Rep. No. 100–963, at 26 (1988), reprinted in 1988 U.S.C.A.A.N. 5782, 5799-5800; see also Bates v. Nicholson, 398 F.3d 1355, 1362-65 (Fed. Cir. 2005) (discussing the history of judicial review of veterans' benefits).

From 1958 until the recodification of title 38 in 1991 by the Department of Veterans' Affairs Codification Act, Pub. L. No. 102–83, § 2, 105 Stat. 378, 388-89 (1991), similar preclusive language to what is today codified at 38 U.S.C. § 511(a) was found in what was then 38 U.S.C. § 211(a) (1958). See Bates v. Nicholson, 398 F.3d at 1364 n.7. In 1958, 38 U.S.C. § 211(a) stated:

(a) Except as provided in sections 784, 1661, 1761 and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any questions of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision.

38 U.S.C. § 211(a) (1958).

Moreover, up until the passage of the Veterans' Judicial Review Act in 1988, the BVA was the only means available to appeal adverse decisions by the Secretary (then, the Administrator) pertaining to veterans' benefits. See 38 U.S.C. § 4004(a) (1988) ("All questions in a matter which under section 211(a) of this title is subject to decision by the Administrator shall be subject to one review on appeal to the Administrator. Final decisions on such appeals shall be made by the Board [of Veterans' Appeals].") (recodified at 38 U.S.C. § 7104 (2012)). Prior to the establishment of the CAVC by the Veterans' Judicial Review Act, however, cases in the United States Court of Claims, the predecessor court to this court and to the United States Court of Appeals for the Federal

Circuit, relied on the preclusive language in 38 U.S.C. § 211(a) to find that decisions by the Secretary involving claims for veterans' benefits were not reviewable. See Slotnick v. United States, 8 Cl. Ct. 784, 787-88 (1985) (finding that "[e]xcept for those challenges based on the constitutionality of the veterans' benefit legislation . . . the result has uniformly been established that § 211(a) expressly restricts the jurisdiction of the federal courts by precluding review of VA benefit determinations," and that "[t]he same result has likewise obtained in Court of Claims precedent, which is binding on this court") (citing Armstrong v. United States, 230 Ct. Cl. 966 (1982), cert. denied, 459 U.S. 1102 (1983); Minimo v. United States, 230 Ct. Cl. 896 (1982); Baker v. United States, 225 Ct. Cl. 668 (1980); Cunningham v. United States, 549 F.2d 753, 212 Ct. Cl. 451 (1977)).

As discussed above, in 1988, Congress passed the Veterans' Judicial Review Act creating the CAVC as codified under chapter 72 of title 38 of the United States Code. See 38 U.S.C. §§ 7251–7299 (2012). As explained by the United States Court of Appeals for the Ninth Circuit in Veterans for Common Sense v. Shinseki, "[a]s Congress explained, the creation of the Veterans Court [CAVC] was 'intended to provide a more independent review by a body which is not bound by the Administrator [Secretary]'s view of the law . . . .'" Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1021 (9th Cir. 2012) (quoting H.R. Rep. No. 100–963, at 26)). The United States Court of Appeals for the Federal Circuit in Bates v. Nicholson described the impact of the Veterans' Judicial Review Act as follows:

> One might have expected this reversal of congressional policy concerning judicial review to have brought about the repeal of section 211(a). It did not. Rather, section 211(a) continued to broadly bar judicial review of benefits decisions but an exception was created for judicial review of such decisions by the newly created Article I court. At the same time, Congress added new sections to Title 38, reflected in today's versions of Chapters 71 and 72, reforming the existing internal mechanisms for the review of benefits decisions by the VA regional offices and by the Board; specifically providing for independent judicial review of the Board's final decisions by a new Article I Court of Veterans Appeals (today known as the Court of Veterans Appeals for Veterans Claims); and providing the Federal Circuit with exclusive appellate jurisdiction over the decisions of the Court of Appeals for Veterans Claims. Veterans' Judicial Review Act, § 301 (codified as amended at 38 U.S.C. § 7251 et seq.).

Bates v. Nicholson, 398 F.3d at 1364-65 (footnote and citation omitted); see also 38 U.S.C. § 7292 (2012) (providing exclusive jurisdiction of CAVC decisions to the United States Court of Appeals for the Federal Circuit). Indeed, the Veterans' Judicial Review Act amended section 211 to read as follows:

> (a)(1) The Administrator shall decide all questions of law and fact necessary to a decision by the Administrator under a law that affects the provision of benefits by the Administrator to veterans or the dependents or survivors of veterans. Subject to paragraph (2) of this subsection, the decision of the

Administrator as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

(2) The second sentence of paragraph (1) of this subsection does not apply to—

    (A) matters subject to section 223 of this title;

    (B) matters covered by sections 775 and 784 of this title;

    (C) matters arising under chapter 37 of this title; and

    (D) matters covered by chapter 72 of this title.

Pub. L. 100–167, § 101, 102 Stat. 4105, 4106 (Nov. 18, 1988) (emphasis added) (quotation marks omitted). Consistent with its purpose, therefore, the Veterans' Judicial Review Act excluded matters to be heard by the CAVC from the general mandate of section 211 precluding courts from hearing claims for veterans' benefits. The above-quoted language in section 211 is effectively equivalent to what can now be found in 38 U.S.C. § 511 (2012),[5] which states:

(a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

(b) The second sentence of subsection (a) does not apply to—

    (1) matters subject to section 502 of this title;

    (2) matters covered by sections 1975 and 1984 of this title;

    (3) matters arising under chapter 37 of this title; and

    (4) matters covered by chapter 72 of this title.

Id. § 511 (emphasis added). Moreover, although it is not explicitly stated in any provision of title 38, the United States Court of Appeals for the Federal Circuit has held that the jurisdiction of the CAVC is premised on a decision by the BVA. See In re Wick, 40 F.3d

---

[5] The slight changes in language and placement in the United States Code both appear to have occurred as a result of the Department of Veterans Affairs Codification Act, Pub. L. 102–83, 105 Stat. 378 (August 6, 1991).

367, 373 (Fed. Cir. 1994) (holding that a Board decision is required to vest the CAVC with jurisdiction over a claimant's appeal); Ledford v. West, 136 F.3d 776, 779 (Fed. Cir. 1998) (explaining that the jurisdiction of the CAVC "is premised on and defined by the Board's decision concerning the matter being appealed" (citing 38 U.S.C. § 7252(b))). Therefore, in order to reach the CAVC, a claim for veterans' benefits must first go through the BVA.

The combination of these provisions, which establishes the review path through the BVA and the CAVC, dictates the review path for the majority of VA benefits that are available to veterans, such as VA disability compensation and education benefits. Generally speaking, this review path is from an adverse decision by the Secretary (typically by way of a VA regional office), to the BVA, to the CAVC, to the United States Court of Appeals for the Federal Circuit, and finally to the United States Supreme Court by grant of certiorari. See Burris v. Wilkie, 888 F.3d 1352, 1357 (Fed. Cir. 2018) (describing the steps under 38 U.S.C. §§ 511(a), 7104(a), 7252(a) for seeking reviews and appeals of VA benefits decisions). The parties in the above-captioned case do not dispute that this is the standard path for such VA claims. This review path, however, is not available for plaintiffs' claims, because, pursuant to 38 U.S.C. § 1720G(c), a determination by the Secretary under the Family Caregivers Program "shall be considered a medical determination," and according to the VA regulation at 38 C.F.R. § 20.104(b), titled "Jurisdiction of the Board," "[m]edical determinations . . . are not adjudicative matters and are beyond the Board's jurisdiction." Indeed, the preamble to the final Rule for the Family Caregivers Program directs:

> [T]he Caregivers Act expressly states that "[a] decision by the Secretary under [the Program of Comprehensive Assistance for Family Caregivers or the Program of General Caregiver Support Services] affecting the furnishing of assistance or support shall be considered a medical determination." 38 U.S.C. [§] 1720G(c)(1). Therefore, all determinations that affect the furnishing of assistance or support through the programs under 38 U.S.C. [§] 1720G are medical determinations as a matter of law, and as such may not be adjudicated in the standard manner as claims associated with veterans' benefits.

Caregivers Program, 80 Fed. Reg. at 1366 (second and third alterations in original) (emphasis added).

Plaintiffs argue that preclusion from the standard review process makes this court available to adjudicate plaintiffs' claims. Although there does not appear to be precedent in this circuit specifically regarding the benefits provided under Family Caregivers Program, or even more generally regarding medical determinations by the VA that do not have available administrative review by the BVA, and subsequent, independent judicial review by the CAVC and the United States Court of Appeals for the Federal Circuit, the preclusive language that remains in 38 U.S.C. § 511(a) still applies. As quoted above, the statute at 38 U.S.C. § 511(a), as it reads today, states:

> (a) The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), <u>the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise</u>.

38 U.S.C. § 511(a) (emphasis added). This preclusive language generally prohibiting courts from reviewing decisions by the Secretary has remained, as discussed above, since its initial iteration, which can be traced back to the World War Veterans' Act of 1924, Pub. L. 68-242, § 5, 43 Stat. 607, 608 (1924). The creation of the CAVC does not alter the long-standing precedent which relies on the preclusive language now in 38 U.S.C. § 511(a). Even prior to the passage of the Veterans' Judicial Review Act, courts in this circuit had found such preclusive language to make jurisdiction in federal courts unavailable. <u>See</u>, <u>e.g.</u>, <u>Slotnick v. United States</u>, 8 Cl. Ct. 784, 787-88; <u>Armstrong v. United States</u>, 230 Ct. Cl. 966, <u>cert.</u> <u>denied</u>, 459 U.S. 1102 (1983); <u>Minimo v. United States</u>, 230 Ct. Cl. 896; <u>Baker v. United States</u>, 225 Ct. Cl. 668; <u>Cunningham v. United States</u>, 549 F.2d 753, 212 Ct. Cl. 451). Indeed, the passage of the Veterans' Judicial Review Act in 1988 did not repeal the preclusive language that was in 38 U.S.C. § 211(a) at the time, nor did it add an exemption for the United States Court of Federal Claims from court review preclusion, as it did for the CAVC. Without explicit direction by Congress to reverse this long-standing precedent precluding review from this court of benefits under the discretion of the Secretary, the United States Court of Federal Claims remains bound accordingly. Moreover, the reasons for barring claims arising under the Family Caregivers Act from this court are aligned with the purposes that went into the initial "no review" language. <u>Slotnick v. United States</u>, 8 Cl. Ct. at 787. The United States Claims Court judge in <u>Slotnick</u> observed:

> The legislative history of § 211 is rather scant. Nevertheless, from what is available, two general purposes seem to underly the "no review" procedure. The first is, not surprisingly, a monetary consideration. Basically, the provision was enacted to prevent the added administrative and judicial costs of potentially voluminous and possibly protracted litigation involving veterans' benefit claims. Second, and closely related, was to prevent the technical and complex medical determinations engendered in such claims from burdening the courts with the obligation of judicial review.

<u>Slotnick v. United States</u>, 8 Cl. Ct. at 787-88 (footnotes omitted). Indeed, to be eligible for Family Caregivers Program benefits, an "eligible veteran" may require a determination of the presence of "traumatic brain injury, psychological trauma, or other mental disorder." <u>See</u> 38 U.S.C. § 1720G(a)(2), (a)(2)(B). These are the kinds of medical determinations that are of such a "technical and complex" nature that could burden the court with "the obligation of judicial review." <u>See</u> <u>Slotnick v. United States</u>, 8 Cl. Ct. at 787-88.

Furthermore, although claims under the Family Caregivers Program do not have the opportunity for administrative review by the BVA, the VHA's clinical appeals process is available. See VHA Directive 1041. While plaintiffs point out that some of the plaintiffs' claims arose before VA Directive 1041 was issued, plaintiffs do not dispute the existence of the VHA clinical appeals process outlined in prior directives, such as the 2006 VHA Clinical Appeals Directive.[6]

Plaintiffs next argue that because "plaintiffs, and those they seek to represent, are not necessarily veterans in order to qualify for the entitlements they claim," their claims should fall outside of the preclusive reach of 38 U.S.C. § 511(a). The first sentence of section 511(a) states that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a) (emphasis added). The United States Court of Appeals for the Federal Circuit has analyzed the language of this part of section 511(a), and determined its purpose and scope, although in a different context from the one currently at issue. In Bates v. Nicholson, the court found that "section 511's reference to a 'law' is to a single statutory enactment that bears a Public Law number in the Statutes at Large," and therefore, 38 U.S.C. § 511(a) applied to a law pertaining to the revocation of an attorney's VA accreditation because the Statute at Large "'affect[ed] the provision of benefits'" by the Secretary to veterans. Bates v. Nicholson, 398 F.3d at 1361-62 (quoting 38 U.S.C. § 511(a)); see also Hanlin v. United States, 214 F.3d 1319 (Fed. Cir. 2000); Cox v. West, 149 F.3d 1360 (Fed. Cir. 1998). Moreover, the VA defines "[b]enefit" as "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e) (2019) (emphasis added).

---

[6] As discussed in this Opinion above, VHA Directive 2006-057 states, in relevant part:

> In 1991, VHA issued a Directive mandating that all medical centers operate a Patient Advocate Program to address patient inquiries and complaints. In Fiscal Year (FY) 1999, in response to Eligibility Reform and the implementation of an enrollment system with the provision of a fixed benefits package, VHA initiated a review of how clinical disputes were being handled throughout the system. As an outgrowth of that review, in FY 2000, VHA instituted an External Appeal system, which allows Veterans Integrated Service Networks (VISNs) to request prompt, impartial reviews of clinical determination decisions by a professional board external to the agency. As an additional development, this Directive addresses the handling of clinical appeals internal to the agency, with the goal of creating a more efficient and consistent system that incorporates VISN-based management into the reviews and associated veteran customer service improvement activities.

Id. at 1 (emphasis in original). As noted above, VHA Directive 2006-057 was rescinded and replaced with VHA Directive 1041 in 2016.

As discussed above, the Family Caregivers Program at issue in the above-captioned case was originally enacted by the passage of the Caregivers Act, Pub. L. No. 111-163, § 101, 124 Stat. 1130. The preamble to the Caregivers Act describes the law as "An Act To amend title 38, United States Code, to provide assistance to caregivers of veterans, to improve the provision of healthcare to veterans, and for other purposes." Id. (capitalization in original). Title I of the Caregivers Act is titled "Caregiver Support," and provides for a benefit to veterans by way of caregiver assistance. See id. Consistent with the Bates v. Nicholson analysis, the Caregivers Act as a whole is therefore a Statute at Large which "affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a); Bates v. Nicholson, 398 F.3d at 1361-62. Moreover, while the monetary assistance provided for in the Family Caregivers Program is given to individuals who need not be veterans, dependents, nor survivors of veterans, themselves, this law ultimately provides care to veterans based on the veteran's medical condition and medical needs. Furthermore, each application must be submitted not only by the family caregiver seeking assistance, but also by the eligible veteran describing his or her medical condition to obtain benefits, 38 U.S.C. § 1720G(a)(4), and the approved family caregiver must be determined qualified to assist in the care of an eligible veteran. See, e.g., 38 U.S.C. § 1720G(a)(3)(A)(i)(I) ("[T]he Secretary shall provide to family caregivers of eligible veterans . . . such instruction, preparation, and training as the Secretary considers appropriate for the family caregiver to provide personal care services to the eligible veteran."); 38 U.S.C. § 1720G(a)(1)(B) ("The Secretary shall only provide support under the program required by subparagraph (A) [the Family Caregivers Program] to a family caregiver of an eligible veteran if the Secretary determines it is in the best interest of the eligible veteran to do so.") The Caregivers Act, therefore, explicitly ties the eligibility for caregiver assistance to the health conditions of an eligible veteran. The functions of the assistance provided to primary family caregivers, such as respite care, financial planning services and legal services are likewise aimed to "relat[e] to the needs of injured veterans." See 38 U.S.C. § 1720G(a)(3)(A)(ii)(aa), (bb). The monthly stipend is provided to the primary family caregiver to assist in providing support and care to the veteran. Therefore, for the reasons stated above, the Family Caregivers Program is a "law that affects the provision of benefits by the Secretary to veterans," 38 U.S.C. § 511(a), regardless of the fact that caregivers may not themselves be veterans.

In sum, assistance provided under the important and valuable Family Caregivers Program is at the discretion of the Secretary. Moreover, the precedent in this circuit has determined that the explicit conceptual language, which previously was in 38 U.S.C. § 211(a), and, is now in 38 U.S.C. § 511(a), precludes this court from reviewing decisions of the Secretary affecting the provision of benefits by the Secretary to veterans. This is true, notwithstanding the fact that decisions by the Secretary under the Family Caregivers Program are not reviewable by the BVA, or subsequent, independent review by the CAVC. The VHA clinical appeals process is the sole review process for claims under the Family Caregivers Program. Therefore, adhering to the long-standing precedent which has generally precluded jurisdiction to review decisions made by the Secretary involving claims for veterans' benefits based on the no-review language in 38 U.S.C. § 511(a), and which traces as far back as the World War Veterans' Act of 1924, this court finds that it

lacks the jurisdiction to hear plaintiffs' claims brought under the Family Caregivers Program. The court recognizes the sacrifices made by veterans, especially disabled veterans, and the lifelong difficulties they might endure. Veterans whose family caregivers have not been awarded assistance under the program, whose benefits have been terminated or whose benefits have been reduced in tier, admittedly, potentially face difficult challenges. Nonetheless, the statutory scheme for the benefits available to veterans by the VA, as it is currently structured, precludes this court from hearing plaintiffs' claims for review of determinations by the Secretary regarding primary caregiver status for the benefit of disabled veterans, who, together with their proposed caregiver, have applied to be included in the program.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED**, and plaintiffs' complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

IT IS SO ORDERED.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**